UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
ANGEL DILONEZ, and all other non-exempt
employees similarly situated, AURA BUENO,
CARLOS A. DILONE, NORBERTO BUENO,

                         Plaintiffs,                  **<u>ORDER</u>**
                                                                                    CV 13-00845 (JS) (GRB)

-against-

FOX LINEN SERVICE INC. and GEORGE
SUNDEL,

                        Defendants,
-------------------------------------------------------------------X

**GARY R. BROWN, United State Magistrate Judge:**

      Plaintiff Angel Dilonez, along with opt-in plaintiffs Aura Bueno, Carlos Dilone, and Norberto Bueno (collectively, "plaintiffs"), bring this action against their former employer, Fox Linen Service, Inc. ("Fox Linen") and owner George Sundel (collectively, "defendants"). Plaintiffs, who were employed by defendants, allege that defendants violated the Fair Labor Standards Act ("FLSA") and similar New York labor laws by failing to pay overtime wages to plaintiffs and other similarly situated employees. *See generally* Complaint ("Compl."), Feb. 15, 2013, Docket Entry ("DE") [1]. Plaintiffs filed a motion for conditional certification of a collective action pursuant to FLSA § 16(b), 29 U.S.C. § 216(b), which defendants oppose. *See generally* Motion for Conditional Certification of a Collective Class ("Mot."), Nov. 5, 2013, DE [19]; Opposition to Pl.'s Mot. ("Opp'n"), Dec. 2, 2013, DE [22]; Reply, Dec. 16, 2013, DE [25].

      For the reasons that follow, and to the extent of and subject to the provisions contained herein, the motion for conditional certification is GRANTED.

1

## BACKGROUND

Plaintiffs allege that they regularly worked more than forty hours per week at Fox Linen, a laundry business located in Port Jefferson, New York, but did not receive overtime pay. Compl. ¶¶ 3, 29, 32; Mot. 1-2. Plaintiffs, who primarily spoke Spanish, performed non-exempt duties, including sorting, washing, ironing, and folding linens. *See generally* Declaration of Angel Dilonez ("Dilonez Decl."), Dec. 16, 2013, DE [25-2]; Declaration of Norberto Bueno ("Bueno Decl."), Dec. 16, 2013, DE [25-3]; Declaration of Carlos Dilone ("Dilone Decl."), Dec. 16, 2013, DE [25-4]; Declaration of Lorenzo Rodriguez ("Rodriguez Decl."), Dec. 16, 2013, DE [25-5]. Defendants paid plaintiffs and other non-exempt employees by check for the first thirty-five to forty hours worked per week, and then paid them in cash—still at their regular hourly wage—for any hours worked in excess of forty hours per week. *See* Dilonez Decl. ¶¶ 7-11; Bueno Decl. ¶¶ 7-11; Rodriguez Decl. ¶¶ 7-10; Mot. 1-3. According to plaintiffs' declarations, defendants failed to pay other non-exempt employees overtime wages, some of whom are identified in the declarations. *See* Dilonez Decl. ¶¶ 7-10; Bueno Decl. ¶¶ 7-10; A. Bueno Decl. ¶¶ 7-10; Dilone Decl. ¶¶ 7-10; Rodriguez Decl. ¶¶ 6-10.

Plaintiffs seek to conditionally certify a class comprising "[a]ll non-exempt employees of Defendants . . . who performed duties, including but not limited to, separating, washing, ironing, and/or folding laundry." Mot. 2. As part of this motion, plaintiffs request the names, addresses, telephone numbers, and dates of employment of those who may be covered by the collective action for the purpose of sending the potential plaintiffs a Notice of Pendency and a Consent to Join form. Mot. 9-11; *see also* Proposed Notice of Pendency ("Notice"), Nov. 5, 2013, DE [18-6]; Proposed Consent to Join Form ("Consent form"), Nov. 5, 2013, DE [18-7]. Additionally, plaintiffs request that the Court authorize the circulation of the Notice and Consent form in both

English and Spanish and that the Notice be posted at defendants' place of business and published in local Spanish periodicals.  Mot 1, 9-11.

Defendants filed an opposition to this motion claiming that there is no basis for conditional certification because plaintiffs' original supporting declarations are neither dated nor notarized.  *See* Opp'n 2-4.  Defendants also submitted seven affidavits from current employees to show that Fox Linen employees did not work more than forty hours per week.  *See generally* Defs.' Affirmations in Opp'n to Pls.' Mot. ("Defs.' Affs."), Dec. 2, 2014, DE [22-1].  Defendants further contend that even if the Court granted the motion, the class should be limited to workers with the titles of "sorters" or "washers."  Opp'n 4-5.

Defendants also object to certain aspects of the proposed notification process.  First, in light of the FLSA's three-year statute of limitations, defendants request that the Notice and Consent form be sent to current and former employees who worked for defendants within the last three years rather than to employees who worked within the last six years (the New York statute of limitations).  Opp'n 6-8; *see also* 29 U.S.C. § 255(a) (statute of limitations of up to three years); N.Y. Labor Law § 198(3) (statute of limitations of six years).  Second, defendants want any references to New York labor law claims removed from the Notice.  Opp'n 8-9.  Third, defendants want the circulated Notice to inform potential plaintiffs about the potential consequences of entering the action, including discovery obligations, inquiries about immigration status, costs, and counterclaims.  Opp'n 9-11; Defs.' Supplemental Letter, Dec. 3, 2013, DE [23].

Fourth, defendants want to require any opt-in plaintiffs to sign a statement affirmatively alleging that they worked more than forty hours per week and that they were not properly compensated.  Opp'n 10-11.  Fifth, defendants ask that the Court require the opt-in plaintiffs to

3

mail their Consent forms directly to the Court rather than to plaintiffs' counsel. *Id.* Finally, the defendants argue that any translation of the notice or consent forms should be approved by all parties. Opp'n 10-11.

## **DISCUSSION**

I. Legal Standard

The FLSA mandates the following:

> [N]o employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(a)(1). Defendants do not claim that their employees were exempt from the FLSA overtime requirements. *See generally* Opp'n.

II. Collective Class Action

A. Two-Step Certification of a Collective Action

Under 29 U.S.C. § 216(b), plaintiffs in this action may proceed "for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). This is known as a "collective action." *See Myers v. Hertz Corp.*, 624 F.3d 537, 543 (2d Cir.2010); *Ahmed v. T.J. Maxx Corp.*, 10-CV-3609, 2013 WL 2649544, at *7 (E.D.N.Y. June 8, 2013).

A collective action under the FLSA is different than a typical class action under the Federal Rules of Civil Procedure, the strict requirements of which—numerosity, commonality, typicality, and adequate representation—do not apply to a collective action. *Puglisi v. TD Bank, N.A.*, 13-CV-00637, 2014 WL 702185, at *2 (E.D.N.Y. Feb. 25, 2014); *see also* Rule 23. Moreover, in a FLSA collective action, the potential class members must affirmatively "opt in"

to the class. *See Genesis Healthcare Corp. v. Symczyk*, 569 U.S. ----, 133 S. Ct. 1523, 1530 (2013).

The Second Circuit has recognized the procedure for conditional certification, which evolved through decisions by the district courts:

> Although they are not required to do so by FLSA, district courts "have discretion, in appropriate cases, to implement [§ 216(b) ] . . . by facilitating notice to potential plaintiffs" of the pendency of the action and of their opportunity to opt-in as represented plaintiffs. In determining whether to exercise this discretion in an "appropriate case[ ]," the district courts of this Circuit appear to have coalesced around a two-step method, a method which, while again not required by the terms of FLSA or the Supreme Court's cases, we think is sensible. The first step involves the court making an initial determination to send notice to potential opt-in plaintiffs who may be "similarly situated" to the named plaintiffs with respect to whether a FLSA violation has occurred. The court may send this notice after plaintiffs make a "modest factual showing" that they and potential opt-in plaintiffs "together were victims of a common policy or plan that violated the law." In a FLSA exemption case, plaintiffs accomplish this by making some showing that "there are other employees . . . who are similarly situated with respect to their job requirements and with regard to their pay provisions," on which the criteria for many FLSA exemptions are based, who are classified as exempt pursuant to a common policy or scheme. The "modest factual showing" cannot be satisfied simply by "unsupported assertions," but it should remain a low standard of proof because the purpose of this first stage is merely to determine whether "similarly situated" plaintiffs do in fact exist. At the second stage, the district court will, on a fuller record, determine whether a so-called "collective action" may go forward by determining whether the plaintiffs who have opted in are in fact "similarly situated" to the named plaintiffs. The action may be "de-certified" if the record reveals that they are not, and the opt-in plaintiffs' claims may be dismissed without prejudice.

*Myers*, 624 F.3d at 554-55 (alterations and ellipses in original) (citations and footnotes omitted).

Conditional certification "does not produce a class with an independent legal status, or join additional parties to the action. The sole consequence of conditional certification is the sending of court-approved written notice to employees, who in turn become parties to a collective action only by filing written consent with the court." *Genesis Healthcare*, 133 S. Ct. at 1530 (internal quotation marks and citation omitted).

5

B.  Application of the First-Step Analysis

The undersigned finds that plaintiffs, for the purposes of this first step, have met their minimal burden of showing that they and other non-exempt Fox Linen employees are similarly situated.  *See Puglisi*, 2014 WL 702185, at *3-4; *Jenkins v. TJX Cos. Inc.*, 853 F. Supp. 2d 317, 321 (E.D.N.Y. 2012).

According to the sworn statements submitted by plaintiffs, they and other Fox Linen employees typically worked more than forty hours per week and performed non-exempt work, such as sorting laundry, picking up linens, and operating machinery that separated the linens. Dilonez Decl. ¶¶ 4-12; Bueno Decl. ¶¶ 4-13; Rodriguez Decl. ¶ 4; Dilone Decl. ¶¶ 4-11.  Based on discussions with other employees, plaintiffs allege that defendants' non-exempt employees were all similarly paid by check for the first thirty-five to forty hours of the workweek, and then were paid—still at their regular, non-overtime hourly rates—in cash for any hours in excess of forty hours per week.  Dilonez Decl. ¶¶ 7-13; Bueno Decl. ¶¶ 7-13; Rodriguez Decl. ¶¶ 7-9. Plaintiffs, in their declarations, also identify by name some of these non-exempt employees who were subject to this payment scheme.  Dilonez Decl. ¶¶ 7-13; Bueno Decl. ¶¶ 7-13; Dilone Decl. ¶¶ 7-11.  These averments tend to suggest that other Fox Linen's non-exempt employees also typically worked over forty hours per week, performed non-exempt job duties, and were subject to a similar payment scheme that deprived them of overtime compensation.  *See* Dilonez Decl. ¶¶ 4-13; Bueno Decl. ¶¶ 4-13; Rodriguez Decl. ¶¶ 4-9; Dilone Decl. ¶¶ 4-11.  Taken together, this evidence is enough to satisfy the "modest factual showing" requirement.  *See Puglisi*, 2014 WL 702185, at *4.

Defendants first argue that the collective action cannot be conditionally certified because none of plaintiffs' initial declarations were notarized or dated, and thus, the declarations should

6

not be considered by the Court. Opp'n 2. First, consistent with federal law, an unsworn, declaration is fully admissible on a motion, provided such declaration is signed under penalty of perjury. *See* 28 U.S.C. § 1746 (a "matter may, with like force and effect, be supported, evidenced, established, or proved by [an] unsworn declaration"); *Taylor & Fulton Packing, LLC v. Marco Int'l Foods, LLC*, 09-CV-2614, 2011 WL 6329194, at *4 n.2 (E.D.N.Y. Dec. 6, 2011) ("an unsworn declaration made under the penalty of perjury has the same evidentiary weight as an affidavit"). And while the failure to date the declarations represented technical non-compliance with this section, plaintiffs, in their reply, resubmitted dated declarations, which were fully consistent with the statute. *See generally* Dilonez Decl; Bueno Decl.; Rodriguez Decl.; Dilone Decl. By submitting the amended declarations, plaintiff cured any technical deficiency. *See Cuoco v. Hershberger*, 93-CV-2806, 1996 WL 648963, at *3 (S.D.N.Y. Nov. 6, 1996) ("The Court accepts the new [resubmitted] declarations as evidence, and proceeds now to consider the merits of defendants' motion.").

Defendants also submitted seven affidavits of current Fox Linen employees who claim that they never worked more than forty hours per week and that they do not know of any employees who worked more than forty hours per week. *See generally* Defs.' Affs. B-H. Though defendants' affidavits make the conditional-certification decision a closer question, at this pre-notification juncture, the burden upon plaintiffs is "extraordinarily low, and the issues need not be conclusively resolved" until after the notification process. *Puglisi*, 2014 WL 702185, at *5.

Finally, defendants argue that because plaintiffs generally worked as "sorters" and "washers," the conditional certification should extend only to non-exempt employees who worked in the same job positions. Opp'n 5. Defendants' argument, at this step, is unavailing

because plaintiffs' knowledge of other non-exempt employees' work schedules and wages is not limited by their job titles. Based on plaintiffs' declarations, defendants operated a common wage-and-hour scheme. Dilonez Decl. ¶¶ 4-12; Bueno Decl. ¶¶ 4-13; Rodriguez Decl. ¶ 4; Dilone Decl. ¶¶ 4-11. Defendants have provided no evidence to suggest that the alleged payment scheme was limited to only sorters and washers. *See, e.g.*, *Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 368 (S.D.N.Y. 2007) (refusing to limit conditional certification to only "duck feeders" because plaintiffs sufficiently showed that all class members, not just duck feeders, "were subjected to certain wage and hour practices at the defendants' workplace").

Following the notification process, the Court will conduct a more searching factual inquiry as to whether the class members are "truly similarly situated." *Jenkins*, 853 F. Supp. 2d at 320-21. After all, the "sole consequence of conditional certification is the sending of court-approved written notice to employees, who in turn become parties to a collective action only by filing written consent with the court," *Genesis Healthcare*, 133 S. Ct. at 1530, and the Court may, at the second step, decertify the class or divide it into subgroups. But such a decision will take place at the second step of the two-step certification process.

  III.  Notification Procedure

When crafting the notification procedure, "[c]ourts have broad discretion to . . . effectuate the overarching policies of the collective suit provisions and provide employees with accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." *Hernandez v. Immortal Rise, Inc.*, 11-CV-4360, 2012 WL 4369746, at *6 (E.D.N.Y. Sept. 24, 2012) (internal quotation marks omitted).

8

A. Scope of Notification

Plaintiffs propose that the collective action notifications be sent to all non-exempt employees who worked for Fox Linen within the past six years because plaintiffs' state labor claims have a six-year statute of limitations. Mot. 9-10; *see also* N.Y. Labor Law § 198(3). Defendants argue that notifications should be sent to non-exempt employees that worked for Fox Linen only within the last three years because FLSA's statute of limitations is, at most, three years. Opp'n 6-8; *see also* 29 U.S.C. § 255(a) (setting a three-year statute of limitations for "willful" violations of FLSA).

Courts in this district "have held that where a case involves both [New York labor law] and FLSA claims, it promotes judicial economy to send notice of the lawsuit to all potential plaintiffs at the same time even though some individuals may only have timely [state] claims." *Cohan v. Columbia Sussex Mgmt.*, 12-CV-3203, 2013 WL 8367807, at *9 (E.D.N.Y. Sept. 19, 2013) (collecting cases). In light of such considerations, notification shall be sent to employees who worked for defendants within the six years prior to the filing of the complaint. *Id.*

B. References to New York Labor Law Claims in Notice

The proposed Notice, in pertinent part, reads:

> Under New York law, you may have claims for overtime compensation (work performed over 40 hours) and spread-of-hours compensation (work performed in excess of 10 hours per shift) . . . . You will be advised of any additional rights that you may have to recover under New York law in the event that a class us [sic] certified by this Court.

Notice. Defendants request that all references to state claims be removed from the Notice. Opp'n 8-9. Courts in this district have typically allowed such language in collective action notices because "information regarding potential state law claims may be relevant to potential plaintiffs with timely federal claims in deciding whether or not to opt in to the collective action."

9

*Kemper v. Westbury Operating Corp.*, 12-CV-0895, 2012 WL 4976122, at *4 (E.D.N.Y. Oct. 17, 2012) (internal quotation marks omitted) (collecting cases). Furthermore, "[i]nformation regarding state law claims may help potential plaintiffs determine whether they want to opt in to this suit or to pursue their claims in a different forum, and it is not clear how the dissemination of such information would harm defendants." *Id.* Therefore, plaintiffs need not remove the Notice's language regarding New York labor law claims.

      C.  Consequences of Opting In

Defendants request that the proposed Notice be amended to include language that informs potential opt-in plaintiffs of the possible consequences of opting in, such as discovery obligations, inquiries into immigration status, costs, and potential counterclaims. Opp'n 9-11; Defs.' Supplemental Letter.

Courts in the Second Circuit "routinely approve" the inclusion of "a neutral and non-technical reference to discovery obligations" to be included in the Notice. *Velasquez v. Digital Page, Inc.*, 11-CV-3892, 2014 WL 2048425, at *12 (E.D.N.Y. May 19, 2014) (collecting cases). This is to "insure that opt-in plaintiffs understand that their participation would entail greater obligations than participation in some Rule 23 class actions." *Lujan v. Cabana Management, Inc.*, 10-CV-755, 2011 WL 317984, at *11 (E.D.N.Y. Feb. 1, 2011).

Therefore, the following language, which has been widely accepted by courts in this Circuit, shall be included in the Notice: "If you join this lawsuit, you may be asked to give testimony and information about your work for [defendant], to help the Court decide whether you are owed any money." *Velasquez*, 2014 WL 2048425, at *12 (collecting cases).

In contrast, references to inquiries about immigration status are not "neutral" and "non-technical," and may unduly discourage potential plaintiffs from opting into the collective action.

*Id.*; *see also Bermudez v. Karoline's Int'l Restaurant Bakery Corp.*, 12-CV-6245, 2013 WL 6146083, at *1 (E.D.N.Y. 2013) ("chilling effect" of permitting immigration status discovery represents "a very real concern"); *Enriquez v. Cherry Hill Market Corp.*, 10-CV-5616, 2012 WL 440691, at *3 (E.D.N.Y. Feb. 10, 2012) (excluding notice language that would "unduly discourage potential plaintiffs from opting in").  Notwithstanding the undersigned's opinion in *Bermudez*, which held that *Palma v. N.L.R.B.*, 723 F.3d 176 (2d Cir. 2013), raised questions about the relevance of immigration status in FLSA actions, rendering such status discoverable, other courts have reached the opposite conclusion.  *See, e.g.*, *Colon v. Major Perry Street Corp.,* 987 F. Supp. 2d 451 (S.D.N.Y. 2013) ("Discovery into a FLSA plaintiff's immigration status is irrelevant and impermissible"); *Kim v. Kum Gang, Inc.*, 12-CV-6344, 2014 WL 2510576, at *1 (S.D.N.Y. June 2, 2014) ("immigration status of the plaintiffs is not relevant in this case").  Thus, while "inquiries into immigration status" is, as defendants suggest, a possible consequence, it is far from certain, and therefore should not, on balance be included in the Notice.

In addition, as to defendants' proposed language regarding potential costs and counterclaims against plaintiffs, this district often rejects such language because it imposes "an *in terrorem* effect that is disproportionate to the actual likelihood the costs or counterclaim damages will occur."  *Guzman v. VLM, Inc.*, 07-CV-1126, 2007 WL 2994278, at *8 (E.D.N.Y. Oct. 11, 2007); *see also Ritz v. Mike Rory Corp.*, 12-CV-367, 2013 WL 1799974, at *3 (E.D.N.Y. Apr. 30, 2013); *Hernandez*, 2012 WL 4369746, at *7; *Lujan*, 2011 WL 317984, at *11.  Thus, in light of these considerations, language regarding potential costs and counterclaims shall not be included in the Notice.

D.  Defendants' Proposed Addendum to Proposed Consent Form

Defendants argue that the proposed Consent form is an "invitation for free money" because it "does not even require that the employee affirmatively state that they worked over 40 hours in a workweek without receiving overtime." Opp'n 10.  Accordingly, defendants propose that any opt-in plaintiffs must sign a form that, in pertinent part, reads, "I hereby state I worked in excess of 40 hours per week and was not properly compensated for overtime." *See* Opp'n 10; Defs.' Aff. J.  The Notice is well-written and balanced, and the Consent form is not a discovery device.  The documents sufficiently inform potential opt-in plaintiffs about the nature of the action, the potential general outcomes, and the types of allegations that are being asserted.  Thus, the undersigned finds that the Notice and Consent form need not include defendants' proposed addendum. *See* Notice; Consent form.

E.  Translation of Notice

Plaintiffs also request that the Notice and Consent form be circulated in both English and Spanish, and that the Notice be published in local Spanish periodicals.  Mot. 10-11.  Defendants, with little explanation, object to this request, but state that if the Court were to grant plaintiffs' request, any such translations should approved by both parties.  Opp'n 11.

Courts have routinely allowed Notices and Consent forms to be circulated in the "mother tongue of non-English speaking groups of potential plaintiffs." *Colon v. Major Perry St. Corp.*, 12-CV-3788, 2013 WL 3328223, at *8 (S.D.N.Y. July 2, 2013); *Lujan*, 2011 WL 317984, at *14; *Cano v. Four M Food Corp.*, 08-CV-3005, 2009 WL 5710143, at *10 (E.D.N.Y. Feb. 03, 2009).  Such translations are particularly appropriate because all of plaintiffs' declarants primarily speak Spanish.  *See generally* Dilonez Decl.; Bueno Decl.; Rodriguez Decl.; Dilone Decl.  These foreign-language publications are reasonably calculated to reach the targeted

audience, which includes a significant number of Spanish speakers. *See Gortat v. Capala Bros., Inc.*, 07-CV-3629, 2010 WL 1423018, at *12 (E.D.N.Y. Apr. 9, 2010). Thus, the Notice and Consent form shall be circulated in both English and Spanish, the Notice shall be published in local Spanish periodicals, and any translations must be approved by both parties. *See, e.g.*, *Hernandez*, 2012 WL 4369746, at *10 n.10; *Sanchez v. El Rancho Sports Bar Corp.*, 13-CV-5119, 2014 WL 1998236, at *5 (S.D.N.Y. May 13, 2014).

    F.  Posting of the Notice

Plaintiffs request that the Notice and Consent form be posted at defendants' place of business in conspicuous places. Mot. 10. Defendants have not objected to the Notice and Consent form being posted at their place of business. *See generally* Opp'n. Posting Notice at the place of business is common and "[c]ourts routinely approve requests to post notice on employee bulletin boards and in other common areas, even where potential members will also be notified by mail." *Rosario v. Valentine Ave. Disc. Store, Co., Inc.*, 828 F. Supp. 2d 508, 521 (E.D.N.Y. 2011) (citation omitted); *see also Lujan,* 2011 WL 317984, at *14 ("Defendants shall post copies of the Notice, including any translated versions . . . in a location conspicuous to all employees . . . ." (footnote omitted)). Thus, the Notice and Consent form shall be posted in conspicuous places at defendants' place of business.

    G.  Filing of Opt-in Plaintiffs' Consent Forms

The proposed Consent forms currently instruct opt-in plaintiffs to send the forms to plaintiffs' counsel if they wish to join the current collective action. *See* Notice; Consent form. Defendants request that the consent forms instruct opt-in plaintiffs to send their forms directly to the Clerk of the Court. *See* Opp'n 10.

Courts within this Circuit have split on whether the consent forms should be returned to the Clerk of the Court or to plaintiff's attorney. *Compare, e.g.*, *Velasquez*, 2014 WL 2048425, at *14 ("The common practice in the Eastern District is to have opt-in plaintiffs send their consent forms to the Clerk of the Court rather than to plaintiffs' counsel.") *with Mata-Primitivo v. May Tong Trading Inc.*, 13-CV-2839, 2014 WL 2002884, at *6 (E.D.N.Y. May 15, 2014) ("requiring such forms to the Clerk of Court might prove intimidating to potential opt-in plaintiffs and may prevent individuals from joining the action.").

Some courts have held that it is "inappropriate" to require opt-in plaintiffs to send their consent forms to plaintiff's counsel because "such a procedure implicitly discourages opt-in plaintiffs from selecting other counsel." *Rosario*, 828 F. Supp. 2d at 521; *see also Bowens v. Atl. Maintenance Corp.*, 546 F. Supp. 2d 55, 84-85 (E.D.N.Y. 2008); *Iriarte v. Redwood Deli and Catering, Inc.*, 07-CV-5062, 2008 WL 2622929, at *4 (E.D.N.Y. June 30, 2008). Here, the Notice plainly provides that "[y]ou have the right to retain your own counsel." Notice. Given this plain language, the chance of a reasonable reader being unfairly discouraged from seeking other counsel is *de minimis* at best. *See Mata-Primitivo*, 2014 WL 2002884, at *6 ("when the notice instructs that opt-in plaintiffs can select their own counsel, there is only a minimal risk that opt-in plaintiffs will be discouraged from seeking their own counsel." (internal quotation marks omitted)); *Siewmungal v. Nelson Mgmt. Grp. Ltd.*, 11-CV-5018, 2012 WL 715973, at *4 (E.D.N.Y. Mar. 03, 2012) ("Language stating that opt-in plaintiffs have the freedom to choose their own counsel is an appropriate provision of any proposed notice.").

The most compelling reason for requiring opt-in plaintiffs to submit their consent forms to the Clerk of the Court is that "sending the notice to the Clerk of Court avoids the risk of delaying a tolling of the statute of limitations relating to an individual opt-in plaintiff's claims as

14

a result of the turnaround time occasioned between receipt of a consent form by Plaintiffs' counsel and the need to file the form with the Court." *Brabham v. Mega Tempering & Glass Corp.*, 13-CV-54, 2013 WL 3357722, at *7 (E.D.N.Y. July 3. 2013); *see also Robels v. Liberty Rest. Supply, Corp.*, 12-CV-5021, 2013 WL 6684954, at *9 (E.D.N.Y. Dec. 18, 2013).

However, the undersigned believes that, in light of the budgetary constraints and financial limitations faced by the federal courts, the more practicable and efficient method of opting in is for the consent forms to be sent to plaintiffs' counsel. *See Ritz*, 2013 WL 1799974, at *4 ("In order to minimize the burden on opt-in plaintiffs who choose representation by plaintiff's counsel, and to reduce the administrative burden on the court, I am directing that the opt-in forms be returnable to plaintiff's counsel."). Any concerns regarding the statute of limitations should be limited because plaintiffs' counsel has incentive to quickly file the consent forms with the Court. In fact, given the advent of round-the-clock electronic filing, plaintiffs' counsel may, at times, be better equipped to expeditiously file returned consent forms.

H.  Contact Information

Plaintiffs request the names, addresses, phone numbers, and dates of employment of all current and former non-exempt Fox Linen employees. Mot. 11. Plaintiffs intend to use the contact information to send Notices and Consent forms to potential plaintiffs. Defendants have raised no objections to plaintiffs' request for this information. *See generally* Opp'n.

Courts, when conditionally certifying a collective action, often grant requests for potential plaintiffs' "names, last known addresses, telephone numbers (both home and mobile), e-mail addresses, and dates of employment" from the defendants. *Puglisi*, 2014 WL 702185, at *6. Accordingly, defendants shall produce, in an agreed-upon electronic format, the names, addresses, phone numbers, and dates of employment of all current and former non-exempt

15

employees who worked at Fox Linen within the six years prior to the filing of the complaint. Defendants shall produce such information within 10 days of the date of this order.

    I. Opt-in Period

Plaintiffs and defendants have not clearly proposed a specific opt-in window for potential plaintiffs to opt into the collective action. *See generally* Mot.; Opp'n. Accordingly, the Court concludes that sixty days is a reasonable length of time for a notification period, and other courts in this district have granted requests for similar periods. *See, e.g.*, *Barry v. S.E.B. Serv. of N.Y., Inc.*, 11-CV-5089, 2013 WL 6150718, at *11 (E.D.N.Y. Nov. 22, 2013) ("the 60-day opt-in window that plaintiffs propose is appropriate"); *Bowens*, 546 F. Supp. 2d at 85 (observing that courts "have held that a sixty (60)-day period is sufficient for the return of Consent Forms"). Thus, potential plaintiffs shall have 60 days to opt into the collective action, and the notification process shall commence within 14 days of the date of this order.

## CONCLUSION

For the foregoing reasons, to the extent of and subject to the provisions contained herein, the motion for conditional certification is GRANTED. The parties shall engage in the notification process in accordance with this order.


Dates: Central Islip, New York
      July 25, 2014

                                      /s/ Gary R. Brown
                                      GARY R. BROWN
                                      United States Magistrate Judge